**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

MANUEL ORDONEZ-MENDOZA,

   Defendant-Appellant.

No. 09-2127
(D.C. No. 1:09-CR-00036-BB-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

Manuel Ordonez-Mendoza pleaded guilty to violating 8 U.S.C. § 1326 by being an alien illegally present in the United States after having been removed. The Guidelines calculations used to reach his thirty-month sentence were controlled in part by certain stipulations in his plea agreement, as permitted by Fed. R. Crim. P. 11(c)(1)(C). Although the plea agreement also contained a

---

[*]    This panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

waiver of the right to appeal, Mr. Ordonez-Mendoza appealed. The United States has moved to enforce the appeal waiver pursuant to *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). Mr. Ordonez-Mendoza has responded.

Under *Hahn*, we consider three elements: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." 359 F.3d at 1325. Mr. Ordonez-Mendoza challenges each of these elements.[1]

*Within Scope of Waiver*

The first *Hahn* factor is whether the appeal falls within the scope of the appellate waiver. *Id.* "We narrowly construe the scope of [a defendant's] waiver of appeal rights[,] [b]ut we do not hesitate to hold a defendant to the terms of a lawful plea agreement." *United States v. Sandoval*, 477 F.3d 1204, 1206 (10th Cir. 2007) (citation and quotation omitted).

The plea agreement states "[t]he Defendant is aware that federal law affords a Defendant the right to appeal the sentence imposed. Acknowledging

---

[1]     As a general proposition, Mr. Ordonez-Mendoza also "contends circuit courts should not enforce sentencing appeal waivers[.]" Aplt. Resp. at 19. He properly concedes, however, that this panel is bound to follow this court's published decisions, unless there is intervening Supreme Court or en banc precedent. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Thus, this panel cannot overrule *Hahn*.

that, the Defendant knowingly waives the right to appeal any sentence within the applicable sentencing guideline range and imposed in conformity with this plea agreement." Mot. to Enforce, Attach. 1 at 5. Mr. Ordonez-Mendoza seeks to raise two issues on appeal: (1) he was denied his right to allocution at sentencing, and (2) the district court misunderstood the breadth of its discretion to reject the Rule 11(c)(1)(C) plea agreement. He argues that neither of these issues is within the scope of the waiver, because the waiver concerns only the length of his sentence. We disagree. The waiver plainly addresses all challenges to a sentence within the Guidelines range calculated by the court. *See United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007) (stating that the waiver of "'the right to appeal the sentence imposed in this case,'" except for an upward departure, "encompasses all appellate challenges to the sentence other than those falling within the explicit exception for challenges to upward departures"); *Sandoval*, 477 F.3d at 1206-07 (waiver of "'right to appeal any sentence within the guideline range applicable to the statute of conviction as determined by the court'" "precludes any appeal of [the defendant's] sentence other than an upward departure"). Mr. Ordonez-Mendoza's sentence was at the low end of the applicable Guidelines range, and there is no indication that it contravened any portion of the plea agreement. Accordingly, the appeal falls within the scope of the waiver of appellate rights.

*Knowing and Voluntary Waiver*

In determining whether the appeal waiver was made knowingly and voluntarily, we consider "whether the language of the plea agreement states that [Mr. Ordonez-Mendoza] entered the agreement knowingly and voluntarily" and whether there is "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325. Mr. Ordonez-Mendoza bears the "burden to present evidence from the record establishing that he did not understand the waiver." *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003).[2]

The plea agreement indicates that the waiver was knowing and voluntary. The right to appeal and the waiver of that right is clearly set forth in the agreement, and the waiver is represented to be knowing. *See* Mot. to Enforce, Attach. 1 at 5. Further, the agreement states that the plea "is freely and voluntarily made." *Id.* at 6. And just before Mr. Ordonez-Mendoza's signature, it states, "I have read this agreement and carefully reviewed every part of it with my attorney in my native language. . . . I understand the agreement and voluntarily sign it." *Id.*

Mr. Ordonez-Mendoza argues that the plea colloquy was inadequate because the court did not specifically discuss the appeal waiver. He admits that

---

[2] "Mr. Ordonez-Mendoza contends this Court should do as other circuits do and require that the record clearly establish the defendant understood the full significance of the appellate waiver," Aplt. Resp. at 16, but he recognizes that, as discussed in footnote 1, this panel must apply the court's binding precedent.

the waiver was mentioned at least two times during the colloquy, but he objects that the waiver "was not read in open court nor was it explained any further." Aplt. Resp. at 5.

While the court did not discuss the waiver, it was mentioned during the prosecutor's summary of the plea agreement, Mot. to Enforce, Attach. 2 at 26, and then it was raised again by defense counsel, who assured the court that Mr. Ordonez-Mendoza was aware of the waiver, *id.* at 36. The court also confirmed that Mr. Ordonez-Mendoza had been read the plea agreement in Spanish, that his attorney had gone over every part of it with him, and that he signed it freely and voluntarily. *Id.* at 24-25. Even assuming that the court erred by not discussing the waiver in the face of counsel's explicit representation, such omission would not constitute plain error, *see Edgar*, 348 F.3d at 871 (noting that the standard of review is plain error), because it did not affect Mr. Ordonez-Mendoza's substantial rights. "In the context of a plea agreement, an error is prejudicial if the defendant has shown that he would not have pleaded guilty if the district court had complied with [Fed. R. Crim. P.] 11(b)(1)(N)." *Edgar*, 348 F.3d at 872. There is nothing in the record to show that Mr. Ordonez-Mendoza would not have pleaded guilty if the district court had further addressed the appellate waiver during the Rule 11 colloquy.

Because there is no record evidence to dispute Mr. Ordonez-Mendoza's contemporaneous written and verbal assertions of a knowing and voluntary waiver, we conclude that the waiver was knowing and voluntary.

*Miscarriage of Justice*

Finally, we consider whether enforcing the waiver would result in a miscarriage of justice. *Hahn*, 359 F.3d at 1325. This element requires Mr. Ordonez-Mendoza to show (a) his sentence relied on an impermissible factor such as race; (b) ineffective assistance of counsel in connection with the negotiation of the appeal waiver rendered the waiver invalid; (c) his sentence exceeded the statutory maximum; or (d) his appeal waiver is otherwise unlawful and the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1327 (quotation omitted).

Mr. Ordonez-Mendoza contends that the waiver is unlawful because he pleaded guilty under the belief that the court's sentencing process would protect his right to allocution. *See* Mot. to Enforce, Attach. 2 at 41 (informing Mr. Ordonez-Mendoza during the plea colloquy that he would be entitled to speak to the court before sentencing). A denial of allocution has been suggested as an example of an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 736, 739 (10th Cir. 2005) (en banc) ("courts generally have held the fourth prong [of plain-error review, that the error must seriously affect the

-6-

fairness, integrity, or public reputation of judicial proceedings] met . . . when the sentencing court denies the defendant his right to allocution") (citing *United States v. Adams*, 252 F.3d 276, 288-89 (3d Cir. 2001)); *see also United States v. Jarvi*, 537 F.3d 1256, 1262 (10th Cir. 2008) ("[A] denial of allocution is per se prejudicial and requires a remand without an investigation of prejudice."). But Mr. Ordonez-Mendoza was not denied his right to allocution.

During the sentencing hearing, the court asked whether "[d]efendant, defense counsel, or both wish to be heard prior to sentencing?" Mot. to Enforce, Attach. 3 at 3. Defense counsel spoke, then the court asked the prosecutor if the United States wished to respond. Mr. Ordonez-Mendoza did not speak. He argues that he was denied allocution because the court should have afforded him an explicit opportunity to speak after his counsel had finished. The court included him in the initial invitation to speak, however, and it was not required explicitly to renew that invitation after defense counsel's presentation. *See United States v. Archer*, 70 F.3d 1149, 1152 (10th Cir. 1995); *see also United States v. Franklin*, 902 F.2d 501, 507 (7th Cir. 1990) (cited in *Archer*). Accordingly, we need not decide whether it would be a miscarriage of justice to enforce an appeal waiver where a defendant was denied allocution.

Mr. Ordonez-Mendoza also contends that enforcing the waiver with regard to his argument that the district court misconstrued its ability to reject the plea agreement would result in a miscarriage of justice because "it would uphold a

waiver contained in an agreement the district court unlawfully accepted." Aplt. Resp. at 18-19. For two reasons, we are not persuaded that enforcing the waiver would result in a miscarriage of justice under these circumstances.

First, there is no support for the proposition that the district court misunderstood its ability to reject the Rule 11(c)(1)(C) plea agreement. To the contrary, the court specifically noted that its choices were to follow the agreement or to reject it. *See* Mot. to Enforce, Attach. 3 at 5. Mr. Ordonez-Mendoza infers from the court's statements about limitations on its sentencing discretion that the court, in the absence of a Rule 11(c)(1)(C) agreement, would have sentenced him to fewer than thirty months. According to his argument, then, the district court should have rejected the plea agreement in order to sentence him as it believed appropriate. But nothing in the record supports the inference that the court believed a lower sentence would be appropriate.

Second, at sentencing, Mr. Ordonez-Mendoza affirmatively urged the district court to follow the plea agreement. *See id.* Therefore, he has waived any ability, on appeal, to take the position that the court should have rejected the agreement, not followed it. *See United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) ("[A] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right [by inviting the error] is not entitled to appellate relief."). Precluding

Mr. Ordonez-Mendoza from making an argument that he already has waived is not a miscarriage of justice.

*Conclusion*

The motion to enforce the appeal waiver is GRANTED, and this appeal is DISMISSED.

ENTERED FOR THE COURT
PER CURIAM